## WALL *v.* FINNEY *et al.*

1. Where the property of a tenant was levied on under an execution issued
upon the foreclosure of a chattel mortgage, and an affidavit of illegality
was filed and a forthcoming bond given by him, with his landlord
as surety, and thereafter the issues were determined in favor of the
mortgagee and the execution ordered to proceed, it did not establish, in
favor of the surety on the forthcoming bond (the landlord)', a good de-
fense to an action upon the bond, to show that, after it was given, the
landlord foreclosed a lien for supplies furnished to the tenant and also
caused a distress warrant to issue, had the executions levied on the
property, and then withdrew such property from the possession of the
sheriff, by virtue of an agreement with the tenant, and sold it in order
to pay the amounts claimed to be due him. This is true even though the
landlord's liens for rent and supplies may have been superior to that
of the mortgage execution under which the forthcoming bond was given.

2. In such case the surety on the forthcoming bond could not protect him-
self from a recovery thereon, by filing a claim to the property which
he had thus disposed of.

(a)    The surety's own pleadings and evidence showed that he had no title
to the property which he could assert as against the levy of the mort-
gage execution.

3. Where an execution, issued upon the foreclosure of a mortgage on live
stock, was levied on the mortgaged property, and an affidavit of illegality
interposed, and a forthcoming bond given, after the determination of the
issue raised by the affidavit of illegality, adversely to the defendant fil-
ing it, and the entry of an order that the execution proceed, it furnished
no defense to a suit on the forthcoming bond to prove that the animals

died, unless it was affirmatively shown that the failure to return the property when called for by the levying officer was caused by the act of God, and was in nowise the result of the conduct or negligence of the surety who had possession of the property and who set up such defense.

(a) The evidence as to the horse levied on in this case clearly failed to show the facts held necessary to be shown in the preceding headnote. If the evidence as to the mule was sufficient to make a question for submission to the jury, the direction of the verdict will not be reversed, it appearing without contradiction that the issues raised by the affidavit of illegality interposed to the levy of the execution issued on the foreclosure of the two mortgages on personalty were tried together and a single verdict rendered; that the amount of the verdict directed in this case was based on the amount so found; and that uncontradicted evidence of the surety on the forthcoming bonds, who was the defendant in the present case, showed that the value of the property, exclusive of the mule, exceeded the amount of the verdict so directed.

MARCH 15, 1911.

Action on bond.   Before Judge Lewis.   Baldwin superior court. January 11, 1910.

Bynum Andrews gave to H. J. & J. T. Finney two mortgages on personal property, one on certain cotton and the other on a mule and a horse.   Each of these was foreclosed, and the executions issued and were levied on the mortgaged property.   To each levy the defendant interposed an affidavit of illegality, and gave a forthcoming bond with R. L. Wall as surety.   Wall was the landlord of Andrews, and, after the giving of the forthcoming bond, he made an affidavit to foreclose a landlord's lien for supplies and also an affidavit to obtain a distress warrant.   Executions were issued accordingly and levied on cotton and corn previously levied on under the mortgage foreclosure of Finney.   By agreement with Andrews, the tenant, Wall then gave to the sheriff two forthcoming bonds, one under each of these levies in his favor, and the property was delivered into his possession.   He gathered certain cotton which was previously ungathered, and sold all of the cotton and retained the proceeds.   The issues made by the affidavits of illegality which Andrews had interposed to the levies of the Finney mortgages were found against him, and the executions were ordered to proceed.   At the time advertised for the sale, the property was not forthcoming.   Suit was brought against Andrews as principal, and Wall as surety, on each of the forthcoming bonds.   On the trial, Andrews making no defense, Wall admitted a prima facie case on behalf of the plaintiff, and assumed the burden of proof to excuse the failure to produce the property.   He contended that his liens

on the produce were superior to that of the Finney mortgage, and that he had a right to apply the money which he had received at private sale to his claim. He filed amended pleadings, alleging that the property brought its full value, and was not sufficient to satisfy his liens, and offering, if the court should hold that his conduct in making the sale did not excuse the breach of the forthcoming bond on which he was surety, to account to the court for the value of the property thus sold and to pay into court a sum sufficient to cover the claims of the plaintiffs and all costs. He prayed, that, the parties being before the court, it be decreed that he have a superior right to the fund. He testified that the horse and mule levied on under the mortgage execution had died. He stated that the mule died in the lot and the horse in the pasture; that the death of the mule "was not the result of any conduct on my part, and it was not the result of any outside influence, in the nature of a blow; natural causes. The horse was in a pasture on my place." Again, he stated, "The mule died in my stable. I do not know the cause of his death. I know he died, and I had to have him hauled away. I do not know of my own knowledge anything about the cause of the death of the horse. It died in the country." He also testified that the cotton would have brought $582.80 on the day fixed for the sale; and that the horse was worth $50 and the mule $75.

The presiding judge directed a verdict for the plaintiffs for $275 principal, $27 attorney's fees, and $35 interest to commencement of the suit, with interest thereafter. The amounts so fixed were those found in favor of the plaintiffs in the mortgage fi. fas., on the trial of the issues raised by the illegalities, which were apparently tried together, with interest on the principal from the date of the commencement of this suit. To the direction of the verdict, and the judgment entered upon it, the defendant, Wall, excepted.

*Hines & Vinson*, for plaintiff in error.

*Allen & Pottle*, and *D. B. & D. S. Sanford*, contra.

LUMPKIN, J. (After stating the facts.)

1. As to the right to recover on the forthcoming bond given for the cotton which was levied on under the mortgage execution, the case is controlled by the decision in *Barfield v. Covington*, 103 *Ga.* 190 (29 S. E. 759). That case is almost identical in its facts with

the one now under consideration. There the landlord took the crop of the tenant and applied it to the payment of the rent due to himself, after becoming a surety on the forthcoming bond, but before the day of sale. Prior to the day of sale he sued out a distress warrant and placed it in the hands of the sheriff.

If, after the forthcoming bond was given, but before the time for compliance with the obligation of it had arrived, the property had been seized and held or sold by the sheriff under and by virtue of liens of superior dignity to the lien of the process first levied, and under which the forthcoming bond was given, the principal or surety might set up such facts as a defense, and assert that the property had been taken from their possession or control by the. law, and they could not produce it: *Floyd* v. *Cook*, 118 *Ga.* 526 (45 S. E. 441, 63 L. R. A. 450) ; *Allen* v. *Allen*, 119 *Ga.* 278 (45 S. E. 959). In the case now before us, the law did not prevent the delivery of the property in accordance with the obligation of the forthcoming bond. The surety on that bond made affidavits and caused an execution and a distress warrant in his own favor to be issued and levied on the property. But, according to his pleadings, under an arrangement with the tenant, for whom he was surety in the forthcoming bond given under the levy of the Finney mortgage, he obtained possession of the property from the sheriff, and sold it at private sale, to save the expense of legal proceedings, as he claimed. He gave to the sheriff a forthcoming bond. But as he was the plaintiff, who would be the person to enforce such bond, and was also the principal in it, he was practically giving bond to himself, in order to get the property out of the possession of the sheriff and into his own. This was a method of getting rid of a former levy, and of the obligation of a forthcoming bond, not recognized by law, and was ineffectual for that purpose.

In the *Barfield* case, supra, it was said, that, while the surety on the forthcoming bond had a landlord's lien for rent upon the crops grown upon the rented premises, superior to the lien of the common-law judgment of the obligees in the bond, "yet, in order for him to realize the benefit of such superior lien, under the facts of this case, it was necessary for him to have sued out a distress warrant against Barfield [the tenant and principal in the bond], placed it in the hands of the sheriff, and demanded that the pro-

ceeds of the sale of the crop be applied to the satisfaction of the lien for rent, in preference to the judgment lien." In the present case, had Wall complied with the terms of the bond, and delivered the property to the sheriff at the time and place of sale under the mortgage execution, he could have foreclosed his lien and placed the execution with the sheriff to claim the proceeds of the sale. But he could not refuse to deliver the property because he had gotten possession of it, directly, as in the *Barfield* case, or indirectly, as in the present case, and sold it as a means of paying his own claims, and thus prevent a recovery on the bond; nor could he accomplish that result by setting up that the fund which he had thus raised at private sale ought to be awarded to him, as if it had been raised by the sheriff.

2. In *Barfield* v. *Covington,* supra, it was held that it did not furnish valid matter of defense, in a suit on a forthcoming bond given by a defendant, that a third person had filed a claim to the property after the giving of such a bond. In a proper case, the amount collected might be required to be held for the benefit of whom it might concern. *Aycock* v. *Austin,* 87 *Ga.* 566 (13 S. E. 582). If the interposition of a claim by a third party will not relieve the surety on the forthcoming bond, a fortiori, where the surety on the bond has taken possession of the property and sold it, he can not protect himself from a recovery by then interposing a claim to the property. On his own showing made in this case, he had no title to the property. The fact that in his affidavit, made for the purpose of obtaining a distress warrant, he stated that Andrews, his tenant, was indebted to him in "the sum of 6,000 pounds of middling lint-cotton of the value of $622.50," did not show that he had title to any particular cotton, but the contrary. And when he caused a distress warrant to be levied on the cotton as the property of the tenant, and then took possession of it under an agreement with the tenant, he made it evident that it was not his cotton at the time of the levy of the prior process and the giving of the forthcoming bond on which he was surety.

3. In *Carr* v. *Houston Guano & Warehouse Co.,* 105 *Ga.* 268 (31 S. E. 178), where a mortgage fi. fa. was levied on two mules, and an affidavit of illegality interposed, and a forthcoming bond given, it was held, that, after the illegality was dismissed and the execution ordered to proceed, the obligors in the bond could not

excuse themselves from delivering the property on the day of the sale, "unless they show affirmatively that their failure to return the property when called for by the levying officer was caused by the act of God, and was in nowise the result of their conduct or negligence." Evidence was introduced in that case to show that one of the animals died from a disease known as the blind staggers; that two more died in a pasture in a swamp; that the pasture was a fair one; and that a crop of peas had been raised that year on the land which furnished such pasture. It was said that the proof was otherwise silent as to the cause of the disease and the care and attention which the animals received from the obligor; and that this testimony was not sufficient to show that the death of the animals did not result from improper care and attention on the part of the obligor in whose possession the mules were suffered to remain. See also *Young* v. *Waldrip*, 91 *Ga.* 765 (18 S. E. 23). When measured by the rule laid down in those cases, the surety in the present case clearly failed to make out a sufficient defense with respect to the non-delivery of the horse. If the general testimony of the surety in regard to the death of the mule was sufficient to raise a question for the jury, rather than authorize the direction of a verdict by the court, this would not require a reversal. It appears from the allegations in the petition, admitted by the answer, that the issues raised by the illegalities to the mortgage fi. fas. were tried together, and a verdict rendered for the plaintiffs for $275 principal, $27 attorney's fees, and $35 interest, and the executions were ordered to proceed.

Suit was brought on the two forthcoming bonds at the same time. The defendant, in order to obtain the opening and conclusion, admitted a prima facie case in favor of the plaintiffs, including a statement that the value of the total property was in excess of the plaintiffs' demand. The defendant surety testified that the cotton would have brought $582.80 on the day of the sale, and that the horse was worth $50 and the mule $75. The verdict directed was much less than the defendant showed the value to be, regardless of the value of the mule. The verdict was not two separate findings on the two bonds, but a single verdict based on the former verdict on the issues made by the affidavits of illegality.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*